IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ERIC ADAMS,

     Plaintiff,

v.

WESTLAKE PORTFOLIO
MANAGEMENT, LLC,

     Defendant.

CIVIL ACTION NO.
1:23-cv-04295-ELR-RDC

## NON-FINAL REPORT AND RECOMMENDATION

This is a consumer-credit case. Plaintiff Eric Adams, proceeding *pro se*, alleges that Defendant Westlake Portfolio Management, LLC violated the Fair Debt Collection Practices Act ("FDCPA")[1] and Telephone Consumer Protection Act ("TCPA").[2] According to Plaintiff, Defendant's efforts to collect on a vehicle loan were unlawful. Pending before the Court is Defendant's motion to dismiss Plaintiff's second amended complaint ("SAC")—the current operative pleading. (Doc. 14). For the reasons below, the undersigned **RECOMMENDS** that Defendant's motion to dismiss be **GRANTED IN PART** and **DENIED IN PART**.

---

[1] 15 U.S.C. § 1692, *et seq.*

[2] 47 U.S.C. § 227.

# I. BACKGROUND

## A. Factual Background [3]

On May 24, 2023, Defendant, a debt collector, sent Plaintiff a dunning letter telling him that he owed a balance of more than $22,000 to U.S. Auto Finance, Inc. for an outstanding vehicle loan. (SAC ¶ 5 and at 14–15).[4] In response, on June 4, 2023, Plaintiff mailed a collection of letters to Defendant disputing the debt, requesting validation of the debt, and instructing Defendant to "cease and desist" all non-mail communication and collection activity.[5] (*Id.* ¶ 6). Plaintiff acknowledges, however, that the letters were lost in the mail and never arrived. (*Id.*).

On June 10, 2023, Defendant began calling Plaintiff's cell phone. (*Id.* ¶ 7). Although he never consented to such calls, Defendant called him more than thirty times, left several voice messages, and texted him twice over the next two-and-a-

---

[3] The facts are taken from Plaintiff's well-pleaded allegations and the exhibits he submitted along with his pleading. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss . . . .").

[4] Plaintiff's exhibits are at times mislabeled, unlabeled, duplicated, and disordered. The undersigned therefore references Plaintiff's exhibits by CM/ECF page number rather than exhibit number.

[5] Plaintiff appears to concede that he entered into a loan contract with U.S. Auto Finance, Inc., but he alleges—without any explanation—that the contract is unenforceable. *See* (SAC ¶ 31 ("The contract with US Auto Sales is unenforceable."); Doc. 16 at 28 ("[A]ny payments that the Plaintiff made was [sic] made to the actual dealer that the Plaintiff entered into his contract with . . . .")).

2

half months (roughly eleven weeks)—that is, through August 28, 2023. (*Id.* ¶¶ 7, 12 and at 22–38). When he answered the calls, he was greeted by silence followed by pre-recorded messages. (*Id.* ¶ 10). And when the calls went to voicemail, he received similar pre-recorded messages. (*Id.* ¶ 11). Plaintiff believes the calls, which originated from at least four different telephone numbers, were placed using an automatic telephone dialing system ("ATDS"). (*Id.* ¶¶ 8–9).

On July 13, 2023, after learning that his initial set of letters was lost in the mail, Plaintiff re-sent the letters to Defendant. (*Id.* ¶ 13 and at 16–20). A certified mail receipt confirms the letters were received days later on July 17, 2023. (*Id.* ¶ 14 and at 21). Of the thirty-plus calls and texts that Plaintiff received through August 28, 2023, twenty were made after Defendant received his letters. (*Id.* ¶ 15 and 22–38). Those letters, again, instructed Defendant to cease communications except by mail. (*Id.* ¶ 15 and at 19).

On July 26, 2023, Defendant sent Plaintiff a response to his request for debt validation, enclosing a copy of his account detail that included customer and payment-history information. (*Id.* ¶ 16 and at 47–50). And on July 30, 2023, Defendant sent a letter notifying Plaintiff that his account was in "serious default." (*Id.* ¶ 19 and at 52–53). The letter explained that Defendant was reviewing collection options up to and including repossession. (*Id.* at 52). The letter also instructed Plaintiff to call as soon as possible to discuss options to cure the default. (*Id.*).

On August 17, 2023, Defendant repossessed Plaintiff's vehicle. (*Id.* ¶ 20). Days later, on August 20, 2023, Defendant mailed him a letter stating its intent to sell the vehicle and pursue any remaining deficiency. (*Id.* ¶ 21 and at 54–55). To redeem the vehicle and avoid the sale, on August 31, 2023, Plaintiff paid Defendant $1,722.89. (*Id.* ¶ 22 and at 56).

### B. Procedural History

Plaintiff filed his initial complaint on September 22, 2023. (Doc. 1). He filed his first amended complaint a month later. (Doc. 5). Defendant moved to dismiss both pleadings, but those motions were mooted by Plaintiff's SAC, filed on November 14, 2023. (Docs. 3, 10–12). In the SAC, Plaintiff alleges that Defendant's actions: (i) violated §§ 1692c(a)(1), 1692c(c), 1692d(4), 1692d(5), 1692e(4), 1692e(5), 1692e(10), 1692f(1), 1692f(6), and 1692g of the FDCPA; and (ii) violated the TCPA. (SAC, Counts I & II). As before, Defendant has moved to dismiss all claims under Federal Rule 12(b)(6). (Doc. 14). The motion has been briefed and is ripe for review.[6]

---

[6] The undersigned takes a moment to note several problems with Plaintiff's responsive brief. First, the brief is thirty-one pages—which is six pages too long. *See* LR 7.1(D), NDGa. Second, Plaintiff includes many legal citations to decisions from courts outside of this District or even this Circuit. Although there are exceptions, that practice is generally unhelpful. Third, and relatedly, portions of his brief appear to have been copied directly from briefing in an unrelated case. *See* (Doc. 16 at 7 ("Milestone's motion ignores the appropriate standard which is recognized by this Court . . . .")). The undersigned has elected not to take or recommend any corrective action at this point, but Plaintiff is advised that he must abide by all applicable rules, orders, and practices if this case moves forward.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not satisfy Rule 8, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557.

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* That said, courts must view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). A plausible claim requires a plaintiff to allege "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

Courts must be mindful that "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). Even so, notions of leniency do not excuse a plaintiff from complying with threshold requirements of the Federal Rules of Civil Procedure. *See Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1998). Nor does such leniency "give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jam., Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014).

## III. DISCUSSION

The discussion will address Plaintiff's FDCPA claims first before turning to his TCPA claims.

### A. FDCPA

According to Plaintiff, Defendant violated several provisions of the FDCPA, which was enacted to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). To state an FDCPA claim, a plaintiff must allege three elements: (1) he has been the object of collection activity arising from consumer debt; (2) the defendant is a "debt collector" as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA. *See Frazier v. Absolute Collection Serv., Inc.*, 767 F. Supp. 2d 1354, 1363 (N.D. Ga.

2011). Only the third element—whether Defendant engaged in conduct prohibited by the FDCPA—is at issue here. [7] As noted previously, Plaintiff claims that Defendant violated several of the FDCPA's provisions—namely, §§ 1692c(a)(1), 1692c(c), 1692d(4), 1692d(5), 1692e(4), 1692e(5), 1692e(10), 1692f(1), 1692f(6), and 1692g. Plaintiff's claims under these provisions will be addressed in serial order.

### i. 1692c

First up is § 1692c. As relevant, § 1692c provides that a debt collector may not, without the consumer's consent, communicate with the consumer at "unusual" or "inconvenient" times or places. 15 U.S.C. § 1692c(a)(1). For instance, absent knowledge suggesting otherwise, a debt collector should only contact a consumer between 8:00 a.m. and 9:00 p.m. (in the consumer's time). *Id.* In addition, if a consumer notifies the debt collector in writing that he wants it to cease further communication, the debt collector must generally respect the consumer's wish. *See id.* 1692c(c). There are, however, some limited exceptions to this rule. For instance, a debt collector can still contact the consumer to notify him that it may invoke

---

[7] Defendant also argues in passing that Plaintiff hasn't pled the first element—*i.e.*, collection activity. (Doc. 14 at 7). But collection activity is broadly construed under the FDCPA. *See Frazier*, 767 F. Supp. 2d at 1363. And it includes activities such as telephone collection calls and dunning letters, like those here. *See id.* ("[T]elephonic calls aimed at collecting a debt constitute collection activity [under the FDCPA].\"); *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1217–18 (11th Cir. 2012) (concluding that letters notifying the plaintiff that the defendant was attempting to collect a debt and demanding payment were collection activity).

ordinary and specified remedies, or that it intends to invoke a specified remedy. *Id.* § 1692c(c)(2), (3).

Plaintiff claims that Defendant violated §§ 1692c(a)(1) and 1692c(c) when it continued to call him even after receiving his cease-and-desist letter on July 17, 2023. (SAC ¶¶ 27–28). With respect to § 1692c(a)(1), Defendant counters in its motion to dismiss that Plaintiff hasn't alleged that it called him at an unusual or inconvenient time or place, as required to establish a violation. As to § 1692c(c), Defendant argues that Plaintiff's claims fail because the company's repeated phone calls could have qualified under one of the permitted contact exceptions and Plaintiff's allegations don't establish otherwise. The undersigned agrees that Plaintiff hasn't met his pleading burden under § 1692c(a)(1), but finds that he plausibly states his claim under § 1692c(c).

Starting with § 1692c(a)(1), Defendant is correct in that Plaintiff's allegations do not demonstrate there was anything particularly unusual or inconvenient about the time or place of its phone calls. Indeed, the call records attached to Plaintiff's pleading show that none of the calls at issue were made before 8:00 a.m. or after 9:00 p.m., and he has acknowledged as much. *See* (SAC at 22–38; Doc. 16 at 17 (acknowledging that "the calls from Westlake weren't before 8 am or after 9pm")). The crux of Plaintiff's § 1692c(a)(1) claim seems to be simply that Defendant repeatedly called him after he told the company to stop. *See* (SAC ¶ 27). But whether

Defendant was permitted to continue to contact him is a different question addressed by a different provision—§ 1692c(c)—which will be discussed momentarily. As far as § 1692c(a)(1) goes, however, Plaintiff has only alleged conclusory violations. Nothing unusual or inconvenient. *See Grimsley v. Palm Beach Credit Adjusters, Inc.*, 691 F. App'x 576, 580 (11th Cir. 2017) (finding that the plaintiff could not sustain a § 1692c(a)(1) claim when the defendant only called between 8:00 a.m. and 9:00 p.m. and there was no suggestion it knew the timing of its calls was otherwise inconvenient). So the claim falls short.

Moving on to § 1692c(c), it is reasonable to infer that the repeated phone calls Defendant made between July 17, 2023 and August 28, 2023 were disallowed. As noted, when a consumer notifies a debt collector that he wants it to cease further communication, the debt collector may only contact the consumer for very limited purposes afterward. 15 U.S.C. § 1692c(c). The debt collector is allowed to notify the consumer that it *may* invoke certain specified remedies or that *intends* to do so. *Id.* § 1692c(c)(2), (3). Defendant's July 30, 2023 letter, for example, would appear to qualify as a permitted communication. The letter advised Plaintiff that Defendant was contemplating collection efforts including repossession—an ordinary and specified remedy. (SAC at 52–53.) But Defendant's continued phone calls are different. There is no indication from the face of Plaintiff's pleading that the calls related to specific remedies like repossession. Meanwhile, other indicators suggest

9

the calls were instead just ordinary collection calls. For instance, the call frequency—several per week—was roughly the same before *and* after Plaintiff's cease-and-desist letter. *See* (SAC at 22–38). And the fact that all the calls used pre-recorded messages—again, before *and* after Plaintiff asked Defendant to stop—may not mean much, but it is at least consistent with the notion that the calls were simply standard collection calls. Finally, that Defendant sent Plaintiff a letter notifying him of possible repossession on July 30, 2023 could be understood to signal that its repeated phone calls had a different purpose. *See Smith v. ARS Nat'l Servs Inc.*, 102 F. Supp. 3d 1276, 1280 (M.D. Fla. 2015) (concluding that the plaintiff plausibly stated a § 1692c(c) claim where nothing in the pleadings showed that the debt collector's continued correspondence qualified as a permitted communication); *accord Hair v. Lazega & Johanson LLC*, No. 1:13-cv-01762-AT-AJB, 2014 WL 12571424, at *7 (N.D. Ga. July 7, 2014) ("Plaintiff's testimony that Defendant left prerecorded messages on her telephone answering machine stating that the calls were from a debt collector and requesting a return call is sufficient to enable a reasonable fact finder to determine that communications following Defendant's receipt of Plaintiff's letter [refusing to pay] were typical collections calls and not among the excepted communications [under § 1692c(c)]."), *R&R adopted*, 2014 WL 12575746 (N.D. Ga. Aug. 6, 2024).

To sum up, Plaintiff hasn't alleged there was anything unusual or inconvenient about the time or place of Defendant's phone calls, so his § 1692c(a)(1) claim fails. At the same time, however, Plaintiff has alleged enough to plausibly suggest at this early stage that the repeated phone calls Defendant made after receiving his cease-and-desist letter were for an improper purpose. Discovery should flesh that point out. Thus, the undersigned **RECOMMENDS** that Defendant's motion to dismiss be **GRANTED** as to the § 1692c(a)(1) claim but **DENIED** as to the § 1692c(c) claim.

### ii. 1692d

Next, Section 1692d of the FDCPA prohibits a debt collector from engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Among other things, § 1692d forbids advertising the sale of any debt to coerce payment, *id.* § 1692d(4), and calling a person's phone repeatedly with the intent to annoy, abuse, or harass, *id.* § 1692d(5). Plaintiff claims Defendant committed both these specific wrongs. The undersigned concludes that Plaintiff hasn't stated a plausible claim under § 1692d(4), but that he does successfully make his case with respect to § 1692d(5).

Plaintiff maintains that Defendant violated § 1692d(4) when it notified him on August 20, 2023 that it intended to sell the repossessed vehicle. (SAC ¶ 29).

There is, however, nothing in the SAC that suggests Defendant notified Plaintiff of its intent to sell the vehicle to unlawfully coerce payment rather than to abide by state-law requirements governing the recovery of post-sale deficiency judgments. *See* O.C.G.A. § 10-1-36 (requiring the seller of a repossessed vehicle to provide the owner with notice of its intent to pursue a deficiency within ten days after repossession); *Versey v. Citizens Tr. Bank*, 306 Ga. App. 479, 481 (2010) ("A creditor's failure to comply with the notice provisions of OCGA § 10-1-36 is an absolute bar to recovery of a deficiency judgment."); *accord Newman v. Trott & Trott, P.C.*, 889 F. Supp. 2d 948, 965 (E.D. Mich. 2012) (dismissing the plaintiff's § 1692d(4) claim because there was no allegation or evidence that the defendant creditor "placed [foreclosure] advertisements to coerce payment rather than to initiate foreclosure and comply with the requirements for a non-judicial foreclosure"). For that reason, the § 1692d(4) claim is deficient.

As for § 1692d(5), courts determining whether a debt collector's conduct manifested an intent to harass consider various factors—for instance, the frequency, volume, duration, and content of the communications, and whether the consumer requested that the debt collector stop such communications. *See Barnes v. Seterus, Inc.*, No. 13-81021-CV, 2013 WL 6834720, at *2 (S.D. Fla. Dec. 26, 2013) (articulating factors). Moreover, claims under § 1692d are "viewed from the perspective of a consumer whose circumstances make[] him relatively more

12

susceptible to harassment, oppression, or abuse." *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1179 (11th Cir. 1985). There are no bright-line rules in this context. And because the issue is so fact-intensive, "[o]rdinarily, whether conduct harasses, oppresses, or abuses will be a question for the jury." *Meadows v. Franklin Collection Serv., Inc.*, 414 F. App'x 230, 233 (11th Cir. 2011) (citation omitted). The undersigned concludes that the nature of the inquiry, especially given Plaintiff's *pro se* status and the current posture of the case (pre-discovery), favors letting Plaintiff proceed.

Here's a recap of the relevant facts. Defendant called and texted Plaintiff thirty-plus times over the course of roughly eleven weeks, which averages out to around three calls per week. There were occasions when Defendant contacted Plaintiff on several consecutive days and multiple times on the same day. *See* (SAC ¶¶ 7, 15, 30 and at 22–38). Courts have found similar contact frequency, volume, and patterns are enough to sustain a claim under § 1692d(5). *See Barnes*, 2013 WL 6834720, at *2 ("Considering the frequency of Defendant's calls, 1.5 times a day, despite being told to stop, Plaintiff has made a plausible claim that Defendant intended to harass Plaintiff, and not to simply get in touch."); *Brown v. Credit Mgmt., LP*, 131 F. Supp. 3d 1332, 1340–41 (N.D. Ga. 2015) (finding that evidence raised a question of fact about the debt collector's intent when it called the plaintiff four times in one day, two of which calls occurred after she hung up and one of which

13

occurred after she told the debt collector she was unemployed and couldn't make a payment); *Meadows*, 414 F. App'x at 233 (concluding that a jury could find the debt collector intended to harass the plaintiff where evidence showed it continued to call her, sometimes up to three times a day, even after she informed the debt collector that the debts at issue didn't belong to her); *Akalwadi v. Risk Mgmt. Alts., Inc.*, 336 F. Supp. 2d 492, 506 (D. Md. 2004) (finding a question of fact for a jury as to a debt collector's intent when it called the plaintiff fewer than thirty times over two months but sometimes called on a daily basis and multiple times on the same day). Defendant also used several phone numbers, which could be viewed as evidence that it was trying to disguise its efforts. And the calls were made using pre-recorded voice messages, another fact that further suggests Defendant wasn't simply trying to get in touch. *See Light v. Seterus, Inc.*, 337 F. Supp. 3d 1210, 1215 (S.D. Fla. 2018) (concluding that the plaintiff stated a claim under § 1692d(5), in part, because he alleged that the defendant continued to contact him using an automated dialer with pre-recorded messages). Perhaps most significant, Defendant contacted Plaintiff twenty times *after* receiving his cease-and-desist letter on July 17, 2023, which instructed Defendant to stop all communication except through mail. *See Alston v. Summit Receivables*, No. 6:17-cv-1723, 2018 WL 3448595, at *5 (M.D. Fla. June 27, 2018) (finding that the plaintiff stated a claim under § 1692d(5) where she alleged that the defendant called her repeatedly and continuously after she requested

14

that it stop calling her), *R&R adopted*, 2018 WL 3436789 (M.D. Fla. July 17, 2018); *accord Brown*, 131 F. Supp. 3d at 1340 ("[I]ntent may be inferred by evidence that the debt collector continued to call the debtor after the debtor had asked not to be called and had repeatedly refused to pay the alleged debt."). These facts, taken together, are just enough to push Plaintiff's § 1692d(5) across the plausibility line.

In short, Plaintiff hasn't put forth sufficient facts to sustain his claim under § 1692d(4) because there is no sign that Defendant notified him of its intent to sell the vehicle after repossession for an unlawful coercive purpose. That said, the circumstances of Defendant's repeated phone calls plausibly suggest that it may have intended to annoy or harass him. For these reasons, the undersigned **RECOMMENDS** that Defendant's motion to dismiss be **GRANTED** as to Plaintiff's § 1692d(4) claim but **DENIED** as to his § 1692d(5) claim.

### iii. 1692e

Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. To illustrate what it means, § 1692e provides a non-exhaustive list of offending conduct—three examples of which are relevant here. To start, a debt collector may not represent that the nonpayment of a debt will result in the sale of property unless such action is lawful and the debt collector intends to take such action. *Id.* § 1692e(4). Similarly, a debt collector cannot threaten to take any action

15

that cannot legally be taken or that is not intended to be taken. *Id.* § 1692e(5). Finally, and most broadly, a debt collector cannot use false representations or deceptive means to collect any debt. *Id.* § 1692e(10). Plaintiff insists that Defendant violated each of these provisions, but his allegations do not plausibly show as much.

All of Plaintiff's § 1692e claims take as their starting point either (or both) of two premises—the trouble, however, is that neither is factually supported. First, according to Plaintiff, he didn't owe any money. (SAC ¶ 33). He also alleges, relatedly, that Defendant didn't have any right to repossess his vehicle. (SAC ¶¶ 31–32, 34). Without a right either to payment or repossession, he continues, Defendant acted unlawfully when it notified him of possible repossession, when it conducted the repossession, and when it reported his debt to consumer reporting agencies. (SAC ¶¶ 31–34). But the suppositions at the root of these claims are completely undeveloped. Plaintiff contends that he didn't owe on his vehicle loan, but he doesn't explain why that's the case. He just baldly asserts as much. Likewise, he insists that Defendant had no authority to repossess his vehicle. But he provides no facts to plausibly suggest that might be true. *See Lee v. Medicredit, Inc.*, No. 6:21-cv-16, 2022 WL 135312, at *4–5 (S.D. Ga. Jan. 13, 2022) (dismissing the plaintiff's § 1692e claims because she failed to allege facts showing that the defendant debt collector was not authorized to collect the debt).

16

The pleadings here show that Plaintiff obtained a car loan and defaulted. They do not, however, show that Defendant lacked standing and authority to report and remedy that default through repossession. Without such a factual demonstration, Plaintiff's § 1692e claims all fail. Accordingly, the undersigned **RECOMMENDS** that Defendant's motion to dismiss be **GRANTED** with respect to these claims.

### iv. 1692f

Under section 1692f, a debt collector "may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. As we saw with other provisions of the FDCPA, the generic prohibition under section 1692f is further spelled out with a non-exhaustive series of illustrative violations. So for example, a debt collector cannot collect any debt unless such amount is expressly authorized by agreement or permitted by law. *Id.* § 1692f(1). Nor can a debt collector take or threaten to take any nonjudicial dispossessory action if it lacks a present right to possess the property through an enforceable security interest, or if the property is exempt from dispossession by law. *Id.* § 1692f(6)(A), (C).

In large part, Plaintiff alleges that Defendant violated § 1692f for the same reasons described—and rejected—in the discussion immediately above. That is, according to Plaintiff, Defendant violated § 1692f because it wasn't a party to the vehicle loan agreement, wasn't entitled to any payment, and lacked any right to

repossess the vehicle. (SAC ¶¶ 35–37). Here he implies, however, that the vehicle was also exempt from dispossession. (*Id.* ¶ 37).

The problem, once again, is that Plaintiff hasn't presented any facts that would support an inference in his favor on these determinative issues. To demonstrate, he alleges baldly that "there is no agreement between the Plaintiff and the Defendant"; that "Defendant has no right to possession of the vehicle in question"; and that "[t]here is no present right to possession of the property claimed as collateral through an enforceable security interest." (*Id.* ¶¶ 35–37). Absent are any supporting facts. The long and short of it, to repeat, is that Plaintiff doesn't think Defendant had a right to collect the debt or repossess his car. But Plaintiff's conclusory beliefs, without enhancement, cannot do the work necessary to sustain his claims. *See Maddox v. Aldridge Pite, LLP*, No. 1:23-cv-00398-ELR-JCF, 2023 WL 4049313, at *9 (N.D. Ga. May 30, 2023) (dismissing the plaintiff's § 1692f claim because he failed to show that the defendant debt collector did not have an enforceable security interest in the foreclosure property), *R&R adopted*, 2023 WL 5821723 (N.D. Ga. July 28, 2023); *Lee*, 2022 WL 135312, at *5 ("[C]ourts are not bound to accept as true a legal conclusion couched as a factual allegation." (quotation marks and citation omitted)).

Plaintiff's § 1692f claims rest, at bottom, on "naked assertions" and "formulaic recitation[s] of the elements of a cause of action." *Twombly*, 550 U.S. at

555, 557. That is not enough. Therefore, the undesigned **RECOMMENDS** that Defendant's motion to dismiss be **GRANTED** as to these claims.

### *v. 1692g*

Plaintiff's last FDCPA claim, under § 1692g, concerns the validation of debts—a matter of frequent litigation. This section provides that a debt collector must provide the following information in writing to a consumer either when making its initial communication or within five days later:

(1)     the amount of the debt;

(2)     the name of the creditor to whom the debt is owed;

(3)     a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4)     a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5)     a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a)(1)–(5). Additionally, if the consumer disputes any portion of the debt within the thirty-period just described, then the debt collector must cease

collection efforts until it mails the consumer documentation verifying the debt. *Id.*
§ 1692g(b).

Plaintiff claims that Defendant failed to properly validate the debt. (SAC
¶ 38). But as Defendant correctly argues, his own factual allegations and exhibits
show that it did in fact comply with § 1692g. The first debt communication that
Plaintiff describes is Defendant's May 24, 2023 dunning letter, a copy of which is
attached to the SAC. (SAC ¶ 5 and at 14–15). The letter includes the following
information and admonitions:

(1)    The "total amount of the debt" owed is $22,243.49.

(2)    The debt is owed to U.S. AUTO FINANCE, INC.

(3)    "Call or write to us by 06/30/2023 to dispute all or part of the
debt. If you do not, we will assume that our information is
correct."

(4)    "If you write to us by 06/30/2023, we must stop collection on any
amount you dispute until we send you information that shows
you owe the debt."

(5)    "Write to ask for the name and address of the original creditor, if
different from the current creditor. If you write by 6/30/2023, we
must stop collection until we send you that information."

(SAC at 15). As can be seen plainly, Defendant's dunning letter includes all of the
statutorily prescribed details. *See* 15 U.S.C. § 1692g(a). So there was no violation
of § 1692g(a).

20

Moreover, because Plaintiff admits that Defendant didn't receive his letters disputing the debt and requesting validation until July 17, 2023—fifty-four days after the May 24, 2023 dunning letter—he cannot state a claim under § 1692g(b). His letters were more than three weeks too late.[8] Defendant nevertheless provided Plaintiff with an account detail and payment history in response to his letters. But any argument about the propriety or sufficiency of Defendant's response is doomed because, by his own admission, Plaintiff failed to notify Defendant of his dispute within the thirty-day statutory period. *See Lee*, 2022 WL 135312, at *8 ("[T]o state a claim pursuant to Section 1692g(b), the plaintiff-consumer must plausibly allege that he or she disputed the debt or any portion thereof within thirty days of receipt of the notice of the debt.").

The SAC shows that Defendant provided the information required under § 1692g(a). Meanwhile, Plaintiff failed to dispute the debt within the timeframe set out in §1692g(b). Thus, Plaintiff hasn't stated any plausible claims under § 1692g

---

[8] Even assuming that Plaintiff didn't receive the May 24, 2023 dunning letter for several days after it was sent, his dispute letter still fell outside the thirty-day window. Plaintiff argues that his *initial* set of letters sent on June 4, 2023 was timely, but he admits that Defendant never received them as they were lost in the mail. (SAC ¶ 6). Even assuming that equitable tolling were permitted in this context and that Plaintiff had argued as much, the circumstances here do not justify its application. "Equitable tolling is appropriate only when a plaintiff untimely files due to 'extraordinary circumstances that are both beyond his control and unavoidable even with diligence.'" *Fish v. GEICO Ins.*, 606 F. App'x 576, 576 (11th Cir. 2015). Here, the dunning letter stated that Plaintiff could submit a dispute electronically directly through Defendant's website, without using the mail at all. (SAC at 15). That fact, when coupled with the lack of argument or other evidence suggesting extraordinary circumstances, shows that tolling would be inappropriate.

and the undersigned **RECOMMENDS** that Defendant's motion to dismiss be **GRANTED** as to such claims.

### B. TCPA

Turning finally from the FDCPA to the TCPA, this statute makes it illegal to call a cell phone "using any automatic telephone dialing system or an artificial or prerecorded voice" for non-emergency purposes without the "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A). It defines an "automatic telephone dialing system," or ATDS, as equipment which has the capacity: "(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* § 227(a)(1). As relevant, to state a claim under the TCPA, a plaintiff must allege that: (1) a call was made to his cell phone; (2) by the use of an ATDS or pre-recorded voice; and (3) without his prior express consent. *See Augustin v. Santander Consumer USA, Inc.*, 43 F. Supp. 3d 1251, 1253 (M.D. Fla. 2012).

Plaintiff has alleged enough to sustain his TCPA claims. He maintains, with sufficient detail, that Defendant called and texted his cell phone more than thirty times using an ATDS and pre-recorded messages without his consent. (SAC ¶¶ 7–12, 41–42). His allegations hit each of the requisite elements. *See Augustin*, 43 F. Supp. 3d at 1253; *Dotson v. Dish Network, L.L.C.*, No. 2:19-cv-21, 2019 WL 1928497, at *4 (S.D. Ga. Apr. 30, 2019) (observing that limited factual allegations

satisfying the requisite elements are enough to "establish the minimum requirements of a claim under [the TCPA]"). Defendant argues that Plaintiff's claims fail because he hasn't alleged enough details to suggest that it used an ATDS when it called him. Defendant relies on the U.S. Supreme Court's recent interpretation of that term, but the argument misses the mark.

In *Facebook, Inc. v. Duguid*, the Court offered a technical reading of a technical term. It held that to qualify as an ATDS within the meaning of the TCPA, a device must have the capacity either to store a telephone number using a random or sequential generator, or to produce a telephone number using a random or sequential generator. 592 U.S. 395, 399, 409 (2021). In other words, the use of a random or sequential generator, whether to store or produce a telephone number, was key in the Court's estimation. *Id.* According to Defendant, Plaintiff simply asserts that it used an ATDS but he fails to present additional facts—*i.e.*, the use of a random or sequential generator—necessary to satisfy the specialized meaning of that phrase as articulated in *Facebook*. Defendant is incorrect, as *Facebook* itself makes plain.

The TCPA prohibits the use of any ATDS *or*—this connective is critical—a pre-recorded voice. 47 U.S.C. § 227(b)(1)(A). Plaintiff alleges *both* alternatives— that is, that Defendant called him using an ATDS *and* pre-recorded voice messages. *See* (SAC ¶¶ 10–11). While *Facebook* offers a technical reading of the former term

(ATDS), it disclaims any interpretation of the latter (pre-recorded messages). In the Court's own words, then, the *Facebook* decision "does not affect" the TCPA's separate prohibition on using a pre-recorded voice to call someone's cell phone. *Id.* at 409; *see also* 47 U.S.C. § 227(b)(1)(A). Put another way, Defendant's use (or non-use) of an ATDS may be entirely irrelevant to Plaintiff's TCPA claims.[9]

Plaintiff has alleged each element necessary to state his claims under the TCPA. The undersigned therefore **RECOMMENDS** that Defendant's motion to dismiss the claims be **DENIED**.

### IV. CONCLUSION

For the reasons stated, the undersigned **RECOMMENDS** that Defendant's motion to dismiss, (Doc. 14), be **GRANTED IN PART** and **DENIED IN PART**. Specifically, the undersigned **RECOMMENDS** the following:

(1)   Defendant's motion to dismiss should be **GRANTED** as to Plaintiff's claims under §§ 1692c(a)(1), 1692d(4), 1692e(4), 1692e(5), 1692e(10), 1692f(1), 1692f(6), and 1692g of the FDCPA. These claims should be **DISMISSED *WITH PREJUDICE***.

---

[9] In any event, as other courts in this Circuit have explained, a plaintiff at the motion-to-dismiss stage "is not required to elaborate on the specific technical details of [the debt collector's] alleged [ATDS], such as what type of machines were used to make a call . . . ." *Deegan v. Specialized Loan Serv., LLC*, No. 8:19-cv-2356, 2020 WL 13356789, at *3 (M.D. Fla. Nov. 13, 2020) (citation omitted).

(2)     Defendant's motion to dismiss should be **DENIED** as to Plaintiff's

claims under §§ 1692c(c) and 1692d(5) of the FDCPA, and further

**DENIED** as to Plaintiff's claims under the TCPA.

If the presiding District Judge agrees or otherwise permits any of Plaintiff's claims

to proceed, Defendant must answer the SAC within fourteen (14) days after the

District Judge's order. *See* Fed. R. Civ. P. 12(a)(4)(A). The parties are further

**ORDERED**, in that event, to file an amended Joint Preliminary Report and

Discovery Plan within thirty (30) days after the District Judge's order.

IT IS SO **RECOMMENDED** on this 25th day of March 2024.

REGINA D. CANNON
United States Magistrate Judge