**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JAN 08 2025

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

ERIC ADAMS,                        )
                                   )
        Plaintiff,                 )
                                   )
v.                                 ) CASE NO.: 1:23-CV-04295-ELR-RDC
                                   )
WESTLAKE PORTFOLIO                 )
MANAGEMENT, LLC,                   )
        Defendant.                 )
_____)


## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN

## SUPPORT OF MOTION FOR SUMMARY JUDGMENT


Pursuant to Federal Rule of Civil Procedure 56, Rules 7.1 and 56.1 of the Local rules for the United States District Court, Northern District of Georgia, Plaintiff Eric Adams hereby moves for an order granting summary judgment in Plaintiff's favor.

The basis for this motion is fully set forth in the Memorandum accompanying this motion. Plaintiff further relied upon the pleadings, discovery materials, and other documents filed to date, as well as the Affidavit in Support,

filed concurrently herewith.

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

This case arises from Defendant's violations of the Telephone Consumer Protection Act (TCPA) and the Fair Debt Collection Practices Act (FDCPA). At all times, Defendant has presented themselves as a debt collector attempting to collect on an alleged defaulted debt originally owed to U.S. Auto Finance, Inc. In efforts to gain clarification on the alleged debt, Plaintiff mailed a Debt Validation letter. See Ex.A at p.1 Overwhelmed by the frequency and amount of calls received by Defendant, Plaintiff included a Cease and Desist with the Debt Validation letter. See Ex. A at p.1-2. Defendant acknowledged receiving the Plaintiff's Debt Validation letter and Cease and Desist as the letters were signed for on 7/17/2023; Defendant sent a response which also acknowledged the receipt of those letters. See Ex. B at p.1-4. Despite receiving the Cease and Desist letter from the Plaintiff which specifically told the Defendant to only communicate through mail, Defendant still proceeded to make unauthorized calls and a text to the Plaintiff's personal cell phone and as such, those communications became willful and made with the intent to abuse, harass and oppress the Plaintiff.

Defendant has admitted to leaving pre-recorded messages on Plaintiff's cell

2

Defendant has admitted to leaving pre-recorded messages on Plaintiff's cell phone in their responses to the Plaintiff's Requests for Admission #11. See Ex. E at p. 5. Plaintiff has never given expressed or written consent to be called by the Defendant. Any alleged consent was revoked through a cease-and-desist letter. Additionally, Defendant continued to contact Plaintiff after receiving instructions to cease communication via telephone calls, violating the FDCPA.

The FDCPA is a strict liability statute, meaning the Defendant's intent or good faith is irrelevant to liability. Similarly, under the TCPA, courts have consistently interpreted its provisions to favor consumers and limit unauthorized communications. The undisputed facts demonstrate that Defendant violated the TCPA by using pre-recorded messages without valid consent and the FDCPA by continuing to contact Plaintiff after receiving a cease-and-desist letter.

## II. STATEMENT OF MATERIAL FACTS

1. It is undisputed that the Plaintiff is a consumer as defined by 15 U.S.C. § 1692a(3).

2. It is undisputed that in May of 2023 the Plaintiff received a collection letter from Defendant. Ex D at p.2. The letter claimed that Plaintiff owed $22,243.49 to U.S. Auto Finance, INC. and that they were attempting to collect on the alleged debt. Plaintiff was confused because he had been paying his payments to U.S.

Auto Finance, INC. and had no reason to believe that he had to now remit payments to Defendant. Defendant, however, created false emails and documents that they've sent to the Plaintiff during discovery in an attempt to mislead the Plaintiff and the court into thinking that they've communicated with the Plaintiff prior to the collection letter that in Ex. D at p.2. The emails that they've sent during discovery to the Plaintiff were never received by the Plaintiff and it is apparent that they were created specifically for this case. If an email was sent from one party to another, there should be a subject line and address bar, there is no such thing presented in the alleged email correspondences allegedly sent from the Defendant to the Plaintiff. See Exhibit F. There was also another email that was allegedly sent from the Defendant to the Plaintiff about making a payment, at the very end of the email it reads:



Screenshot 2024-05-31 at 4.20.22 PM

PLEASE DO NOT REPLY TO THIS EMAIL - This email was sent to {{cun_email}} for the account number ending in {{westlake_acc}}. If you are not the intended recipient, please delete this email.

©2022 Copyright. All rights reserved to Westlake Portfolio Management, LLC.

Privacy Policy

It is apparent that this email was dated 2022 and a reasonable person would question its authenticity.

If the Defendant began "servicing" the account in question in May 2023, they

4

would not be sending an email to the Plaintiff in 2022; the information should be

filled out and not appear as a failed attempt to draft up documents. See Exhibit F at p. 8.

3. It is undisputed that Defendant, Westlake Portfolio Management, LLC, is collecting debts owed to third-party entities (Auto Loan Pool Trust and Auto Holder LLC are named entities in the Amended & Restated Tri-Party Agreement) and does not own or have the rights to "service" Plaintiff's contract. In an attempt to prove the Defendant's servicing rights of the Plaintiff's contract, the Defendant provided a heavily redacted "Amended & Restated Tri-Party Agreement" that is untrustworthy, unauthenticated and does not prove their right to collect as it does not in anyway reference that the Plaintiff's alleged debt is included in this agreement and that they were given the ability to collect from the Plaintiff. See Ex.G at p.1-41

3. It is undisputed that Defendant is a well-known debt collector as defined by 15 USC 1692a(6). See Ex. H at p.1-2.

4. It is undisputed that Defendant does not have a complete chain of title or assignment demonstrating ownership of the alleged debt. See Defendant's Amended Tri-Party Agreement Ex.G at p.1-41. On 12/10/2024, Plaintiff and

Defendant's counsel conducted a meet and confer about discovery responses and Defendant's counsel admitted that they only have the Agreement shown in Ex.G at p.1-41 to prove that they were assigned servicing rights.

5. It is undisputed that between June 10, 2023, and August 28, 2023, Defendant placed at least 35 calls to Plaintiff's cell phone using an automated dialing system and left pre-recorded messages on the Plaintiff's cell phone. Please see call logs Ex. I at pg. 1-16; Defendant's Admission No. See Ex. E at p. 5. 6. It is undisputed that the Defendant repossessed the Plaintiff's vehicle multiple times without producing documents proving their authority to do so, causing actual irrevocable damages to include depression, mental anguish, embarrassment, and loss of wages. See Plaintiff's Affidavit in Support Ex.C and Defendant's Amended & Restated Tri-Party Agreement Ex. G at pg. 1-41. 7. It is undisputed that Plaintiff revoked any alleged consent to receive automated calls and pre-recorded messages through a Cease and Desist letter dated July 13, 2023, and Defendant continued to place pre-recorded calls after this revocation. See Plaintiff's Cease and Desist letter Ex.A at p. 2; Call logs Ex. I at p. 1-16. 8. Defendant continued to contact after Plaintiff instructed it to stop, violating 15 U.S.C. § 1692c(c) , § 1692d(5), and 47 U.S.C. § 227(b)(1)(A)(iii). Please see call logs Ex. I at p. 1-16 and text Ex.L.

10. It is undisputed that the original creditor materially breached the contract by

failing to remit payment for the warranty service contract, rendering the contract

unenforceable. Please see Plaintiff's Affidavit in Support. Ex. C; communication

from Dealer Owned Warranty Company Ex.J.

11. Defendant has not provided any competent evidence to support its
counterclaim for breach of contract, including their "servicing" rights to collect

payment on the account in question. See Tri-Party Agreement Ex.G at p. 1-41.

The chain of assignment is incomplete and their authority to service has not been

established or proven.

12. It is undisputed that the Defendant has alleged bona fide error, but failed to

show by a preponderance of evidence that the violation of the FDCPA was not

intentional and resulted from a bona fide error. See Defendant's Answer to

Plaintiff's 2nd Amended Complaint. See Doc. 25 ¶2

13. It is undisputed that the Defendant alleged that the Plaintiff filed this

Complaint in bad faith and for the purpose of harassment however, the Plaintiff is

the one who has suffered tremendously by the actions of the Defendant and has

been violated against as stated and proven within this case. See Defendant's

Answer to Plaintiff's 2nd Amended Complaint. See Doc. 25 ¶2

14. It is undisputed that the Defendant used an ATDS to contact the Plaintiff at

all times.

15. It is undisputed that Defendant has provided the Plaintiff with a different

"Tri-Party Agreement" than they did to the Court. See Doc. 63-1 for what they
filed with the court and Exhibit G.

## III. LAW AND ARGUMENT

### A. Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine dispute as to any
material fact" and the moving party "is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). A factual dispute is material only if it could affect the
outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S.242, 248 (1986).
"The principal function of the motion for summary judgment is to show that one or
more of the essential elements of a claim or defense is not in doubt and that, as a
result, judgment can be rendered as a matter of law." *Tippens v. Celotex Corp.*, 805
F.2d 949, 952 (11th Cir. 1986). When there is no genuine dispute as to any material
fact, the moving party is entitled to judgment as a matter of law on all or any part
of a claim. Fed. R. Civ. P. 56(a). Once the moving party has met its initial burden
of proving that no genuine issue of material fact exists, the burden shifts to the
opposing party to establish otherwise. *Matsushita Elec. Indus. Co., Ltd. v. Zenith
Radio Corp.*, 475 U.S. 574, 585-586 (1986). To avoid summary judgment, the

opposing party must go beyond the pleadings to designate specific facts
establishing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323
(1986). In so doing, the opposing party "must do more than simply show that there

8

is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

Rather, it "must come forward with significant, probative evidence demonstrating

the existence of a triable issue of fact." *Irby v. Bittick*, 44 F.3d 949, 953 (11th Cir.

1995).

## B. FDCPA Standard of law

The FDCPA is a strict-liability statute construed liberally in favor of debtors.

The Fair Debt Collection Practices Act was enacted to protect consumers from

improper or abusive debt collection efforts. 15 U.S.C. § 1692. The FDCPA is a

strict-liability statute which "makes debt collectors liable for violations that are not

knowing or intentional." Reichert v. Nat'l Credit Sys., Inc., 531 F.3d 1002, 1005

(9th Cir. 2008); see also McCollough v. Johnson, Rodenburg & Lauinger, LLC, 637

F.3d 939, 948 (9th Cir. 2011). "A single violation of any provision of the Act is

sufficient to establish civil liability under the FDCPA." Taylor v. Perrin, Landry,

deLaunay& Durand, 103 F.3d 1232, 1238 (5th Cir. 1997).

The FDCPA is a remedial statute construed liberally in favor of the consumer.

Tourgeman v. Collins Fin. Servs, Inc., 755 F.3d 1109, 1118 (9th Cir. 2014); Clark

v. Capital Credit & Collection Servs., Inc., 460 F.3d 1162, 1176 (9th Cir. 2006)

("we wish to reinforce that the broad remedial purpose of the FDCPA is

concerned primarily with the likely effect of various collection practices on the

minds of unsophisticated debtors.").

The "least sophisticated consumer" standard applies to Plaintiff's FDCPA

claims.

## C. Defendant Is Subject to The FDCPA

It is not a matter for meaningful dispute that Westlake Portfolio

Management, LLC ('Defendant') is a "debt collector" under 15 U.S.C.§1692a(6).

Notwithstanding the fact that Westlake Portfolio Management, LLC proudly claims

it is a debt collector on its website https://www.wpmservicing.com, it is a matter of

public record and through their principle state of office, California, that the

Defendant is licensed as a debt collector. See screenshot below from Department of

Financial Protection & Innovation.



REGULATED ENTITY

## Westlake Portfolio Management, LLC

License Number: 10432-99 Status: Active Effective Status Date: 8/24/2023 Legal Name
Organization: Westlake Portfolio Management, LLC Organization DBA: Originally Licensed On:
8/24/2023 License Type: Debt Collectors Address1: 4751 Wilshire Blvd., Suite 100 Address2:...

Similarly, there can be no dispute that Plaintiff is a "consumer" under 15 U.S.C. §
1692a(3) as he was "allegedly obligated to pay" a debt. The alleged debt at issue
arises out of an alleged auto loan with U.S Auto Sales, which Westlake Portfolio
Management alleged that Plaintiff was obligated to pay and he defaulted on. As to
whether LVNV is a "debt collector," the FDCPA defines "debt collectors," as (1)
those involved "in any business the principal purpose of which is the collection of
any debts," and (2) those "who regularly collect[ ] or attempt[ ] to collect, directly
or indirectly, debts ... owed or due another." 15 USC § 1692a(6).1 In *441 Henson
*v. Santander Consumer USA Inc.*, the Supreme Court recently addressed the

second definition of "debt collector," one who "regularly collects" debts. *See* ——

U.S. ——, 137 S.Ct. 1718, 198 L.Ed.2d 177 (2017).Ramos v. LVNV Funding,

LLC, 379 F. Supp. 3d 437, 440–41 (E.D. Pa. 2019). Defendant has always stated

that the Plaintiff was in default including in its initial communication with the

Plaintiff in their collection letter. Ex. D at p. 2 pages. The term "debt collector,"

however, "does not include the consumer's creditors, a mortgage servicing

company, or an assignee of a debt, *as long as the debt was not in default at the*

11

*time it was assigned.*" (Citations omitted; emphasis supplied) *Perry v. Stewart*

*Title Co.,* 756 F.2d 1197, 1208(II)(C) (5th Cir.1985) (emphasis supplied). See also

*Goia v. CitiFinancial Auto,* 2012 WL 113647, *11, (II)(G) (N.D.Ga., 2012); *Bates*

*v. Novastar/Nationstar Mtg.,* 2008 WL 2622810, *6 (III)(A) (N.D.Ga., 2008)

Babalola v. HSBC Bank, USA, N.A., 324 Ga. App. 750, 756, 751 S.E.2d 545, 551

(2013)


**D. Defendant failed to prove their bona fide error defense**

A defendant is entitled to invoke the FDCPA's bona fide error defense only if it can

show that the violation: (1) was unintentional, (2) resulted from a bona fide error,

and (3) occurred despite the debt collector's maintenance of procedures

reasonably adapted to avoid such error. *Kort v. Diversified Collection Servs.,*

*Inc.,*394 F.3d 530, 537 (7th Cir.2005) (citing *Jenkins v. Heintz,* 124 F.3d 824, 834

(7th Cir.1997)). Plaintiff contends that the Defendant has failed to establish the all

3 elements including that the Defendant did not have reasonable procedures in

place to prevent the kind of error they alleged to have committed in this case.

Ruth v. Triumph Partnerships, 577 F.3d 790, 803 (7th Cir. 2009). Discovery has

shown that the Defendant only made the bona fide error claim as a way to

mislead the court. The failure by the debt collector to meet any one of these

requirements is fatal to the debt collector's defense. Arrow Fin. Servs., LLC v.
Wright, 311 Ga. App. 319, 321, 715 S.E.2d 725, 727 (2011).

## E. TCPA Standard of law

"Enacted in 1991, the TCPA was a response by Congress to the reactions of
American consumers over intrusive and unwanted phone calls." *Am. Ass'n of
Political Consultants, Inc. v. Fed. Commc'ns Comm'n*, 923 F.3d 159, 161–62 (4th
Cir. 2019) ("*AAPC*"). The automated call ban prohibits phone calls to cell phones
that use "any automatic telephone dialing system or an artificial or prerecorded
voice." 47 U.S.C. § 227(b)(1)(A). Text messages qualify as "calls" under the
TCPA. *See Campbell-Ewald v. Gomez*, —— U.S. ——, 136 S.Ct. 663, 667, 193
L.Ed.2d 571 (2016). Congress also authorized the FCC to implement rules and
regulations enforcing the TCPA. 47 U.S.C. § 227(b)(2). Wilson v. PL Phase One
Operations L.P., 422 F. Supp. 3d 971, 978 (D. Md. 2019). The TCPA prohibits, in
pertinent part, the making of "any call ... using any automatic telephone dialing
system or an artificial or prerecorded voice" to "any telephone number assigned to
a ... cellular telephone service" without the prior express consent of the called
party. 47 U.S.C. § 227(b)(1)(A)(iii). "To state a claim under the TCPA for calls
made to a cellular phone, a plaintiff must allege that: (1) a call was made to a cell

13

or wireless phone, (2) by the use of any automatic dialing system or an artificial or prerecorded voice, and (3) without prior express consent of the called party." *Augustin v. Santander Consumer USA, Inc.*, 43 F. Supp. 3d 1251, 1253 (M.D. Fla. 2012) (citations omitted). <u>Gurzi v. Penn Credit, Corp.,</u> 449 F. Supp. 3d 1294, 1297 (M.D. Fla. 2020).

An "automatic telephone dialing system" is defined as equipment that "has the capacity (A) to store or produce telephone numbers to be called, using a random **\*979** or sequential number generator, and (B) to dial such numbers." *See id.* § 227(a)(1). The automated call ban does not, however, prohibit automated calls to cell phones initiated (1) "for emergency purposes," *see* 47 U.S.C. § 227(b)(1)(A); (2) with "the prior express consent of the called party," *id.*; or (3) "by the federal government itself," *AAPC*, 923 F.3d at 162. Thus, to state a claim under the TCPA, "a plaintiff must allege: (1) that the defendant called the plaintiff's cellular telephone; (2) using an automatic telephone dialing system; [and] (3) without the plaintiff's prior express consent." *Hossfeld v. Gov't Employees Ins. Co.*, 88 F.Supp.3d 504, 510 (D. Md. 2015). <u>Wilson v. PL Phase One Operations L.P.,</u> 422 F. Supp. 3d 971, 978–79 (D. Md. 2019)

An "automatic telephone dialing system" is defined as equipment that "has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator, and (B) to dial such numbers."1 *See* <u>47</u>

14

U.S.C. § 227(a)(1).

Subject to exceptions not pertinent here, the TCPA principally outlaws

four practices. First, the Act makes it unlawful to use an automatic telephone

dialing system or an artificial or prerecorded voice message, without the prior

express consent of the called party, to call any emergency telephone line, hospital

patient, pager, cellular telephone, or other service for which the receiver is

charged for the call. See 47 U. S. C. §227(b)(1)(A). Sec-ond, the TCPA forbids

using artificial or prerecorded voice messages to call residential telephone lines

with- out prior express consent. §227(b)(1)(B). Third, the Act proscribes sending

unsolicited advertisements to fax machines. §227(b)(1)(C). Fourth, it bans using

automatic telephone dialing systems to engage two or more of a business'

telephone lines simultaneously. §227(b)(1)(D). [ 2 ]Mims v. Arrow Financial

Services, LLC, 565 U.S. 368 (2012).


**A. Defendant Violated the TCPA**

Defendant has never received prior expressed consent from the Plaintiff to

call his personal cellular phone. The Defendant admitted to leaving pre-recorded

messages on the Plaintiff's voicemail. See Defendant's Admission No. See Ex. E at

p. 5.

15

Defendant has never alleged that they've called the Plaintiff for any other reason besides to attempt to collect on an alleged debt. There is no dispute that the Defendant did not call and text the Plaintiff for emergency purposes.

If the Defendant tries to allege that consent was transferred with the contract entered in with the original creditor, consent in the original contract does not extend to Defendant. The contract with the original creditor does not explicitly grant consent for automated calls and pre-recorded messages to transfer to Defendant. Westlake relies on the unvalidated conclusory assertion that Plaintiff's consent to receive prerecorded messages transferred to Westlake when U.S Auto allegedly assigned them servicing rights for the RISC. However, they have failed to provide competent evidence of a complete chain of assignment and have failed to show where they were explicitly assigned "servicing rights" for the Plaintiff's RISC. Further, the writing "must identify the assignor and assignee." (Footnote omitted.) Id. To prevail on its motion for summary judgment, Cach, as movant, has the burden of "establishing the non-existence of any genuine issue of fact," including Wirth's assertion that Cach is not the real party in interest, and "all doubts are to be resolved against [Cach]." (Citation and punctuation omitted.) *Sawgrass Builders v. Key,* 212 Ga.App. 138(1), 441

Even if consent was granted initially, Plaintiff revoked such consent through

a Cease and Desist letter received July 17th, 2023. Under Eleventh Circuit

precedent, consent may be revoked by any reasonable means. See Osorio v. State

Farm Bank, F.S.B.*, 746 F.3d 1242, 1255 (11th Cir. 2014). Defendant's continued

calls after this revocation violated the TCPA's prohibition on unauthorized

automated calls and pre-recorded messages. See Ex. I at p.1-16.


## I. The TCPA Protects Consumers Broadly

The TCPA is a remedial statute designed to protect consumer privacy. Courts

have generally considered the TCPA to be a remedial statute that is to be construed

in favor of consumers. *See Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d

Cir. 2013) ("The TCPA is a remedial statute that was passed to protect consumers

from unwanted automated telephone calls.") (citations omitted); *see also Osorio v.*

*State Farm Bank, F.S.B.*, 746 F.3d 1242, 1252 (11th Cir. 2014) ("The Third Circuit

also reasoned that, 'in light of the TCPA's purpose, any silence in the statute as to

the right of revocation should be construed in favor of consumers.' ") (quoting

*Gager*, 727 F.3d at 270)). Gurzi v. Penn Credit, Corp., 449 F. Supp. 3d 1294,

1299–300 (M.D. Fla. 2020).

Courts consistently interpret its provisions in favor of consumers and against

unauthorized communications. Defendant's use of pre-recorded messages and

unauthorized automated calls without valid expressed consent from the Plaintiff

directly violates 47 U.S.C. § 227(b)(1)(A)(iii).

## B. Defendant Violated the FDCPA

Strict Liability Under the FDCPA

"As this Court has previously noted, the FDCPA is a "broad remedial statute that imposes strict liability on debt collectors; its terms are to be applied 'in a liberal manner.' " *Owens v. Hellmuth & Johnson, PLLC,* 550 F.Supp.2d 1060, 1063 (D.Minn.2008) (Kyle, J.) (quoting *Picht v. Hawks,* 77 F.Supp.2d 1041, 1043 (D.Minn.1999) (Noel, M.J.), *af 'd,* 236 F.3d 446 (8th Cir.2001))"Cordes v. Frederick J. Hanna & Assocs., P.C., 789 F. Supp. 2d 1173, 1175 (D. Minn. 2011). "Numerous courts, including one district court within the Eleventh Circuit, have stated that the FDCPA is a strict liability statute. *See Stewart v. Slaughter,* 165 F.R.D. 696, 699 (M.D.Ga.1996); *Pittman v. J.J. MacIntyre Co. of Nevada, Inc.,* 969 F.Supp. 609, 613 ("The FDCPA is a strict liability statute.... Whether the defendant had actual knowledge of the satisfaction prior to making further attempts to collect goes to the defendant's culpability.") (citations omitted); *Bentley v. Great \*1362 Lakes Collection Bureau,* 6 F.3d 60, 63 (2nd Cir.1993)("The FDCPA is a strict liability statute, and the degree of a defendant's culpability may only be considered in computing damages."); *Russell v. Equifax A.R.S.,* 74 F.3d 30, 33 (2nd Cir.1996)."Kaplan v. Assetcare, Inc., 88 F. Supp. 2d 1355, 1361–62 (S.D. Fla. 2000).

### I.15 USC 1692c(c)

Defendant's failure to cease communications after receiving Plaintiff's cease-and-desist letter and its repeated calls constitute clear violations of 15

18

U.S.C.

§§ 1692c(c) and 1692d(5). Plaintiff at all times has been the object of collection activity for a consumer debt (personal vehicle), used for personal, family, and household purposes. Defendant has at all times presented themselves as a debt collector collecting on a defaulted consumer debt for another entity. See Plaintiff's Affidavit in Support. Defendant's continued calls and text is an act or omission prohibited by the FDCPA.

In order to prevail on an FDCPA claim, a plaintiff must prove that: 1) the plaintiff has been the object of collection activity arising from consumer debt, 2) the defendant is a debt collector as defined by the FDCPA, and 3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Mammen v. Bronson & Migliaccio, LLP,* 715 F.Supp.2d 1210, 1216 (M.D.Fla.2009). Salazar v. MFP, Inc., 847 F. Supp. 2d 1329, 1331 (M.D. Fla. 2012)

**II. 15 USC 1692d(5)**

Defendant called the Plaintiff multiple times after being told not to. In total, the Defendant called the Plaintiff 18 times and after they were told that calls were unwanted, they still continued to call the Plaintiff with the intent to annoy, abuse, or harass the Plaintiff. "Courts have held that '[w]eather there is actionable

harassment or annoyance turns not only on the volume of calls made, but also on

the pattern of calls.' " *Brown v. Credit Mgmt.*, 131 F. Supp. 3d 1322, 1340 (N.D.

Ga. 2015) (quoting *Brandt v. I.C. Sys., Inc.*, No. 8:09-CV-126, 2010 WL 582051, at

*2 (M.D. Fla. Feb. 19, 2010)(citations omitted)). Plaintiff was called by the

Defendant multiple times a day and even back to back. See Ex. I at p. 1, 5, 6, 7, 8,

10, 11,12, 14, 15, and 16. Additionally, "[i]ntent to annoy, abuse, or harass may be

inferred from the frequency of phone calls, the substance of the phone calls, or the

place to which phone calls are made." *Hair v. Lazega & Johanson LLC*, No.

1:13-CV-01762-AT-AJB, 2014 WL 12571424, at *7 (N.D. Ga. July 7, 2014) (citing

*Kerwin v. Remittance Assistance Corp.*, 559 F. Supp. 2d 1117, 1124 (D. Nev.

2008)), *adopted by* No. 1:13-CV-01762-AT, 2014 WL 12575746 (N.D. Ga. Aug. 6,

2014). Moreover, "intent may be inferred by evidence that the debt collector

continued to call the debtor after the debtor had asked not to be called and had

repeatedly refused to pay the alleged debt, or during a time of day which the debtor

had informed the debt collector was inconvenient." *Brown*, 131 F. Supp. 3d at 1340

(quoting *Brandt*, 2010 WL 582051, at *2 (citation omitted)). <u>Merch. v. Nationwide</u>

<u>Recovery Serv., Inc.</u>, 440 F.Supp. 3d 1369, 1380 (N.D. Ga. 2020).Defendants

failure to cease placing unauthorized and prerecorded calls to Plaintiff's cell phone

can be considered harassing. Similarly, a debt collector may harass a debtor by

continuing to call the debtor after the debtor has requested that the debt collector

cease and desist communication. <u>Arteaga v. Asset Acceptance, LLC,</u> 733 F. Supp. 2d 1218, 1227 (E.D. Cal. 2010).

**C. Defendant's Counterclaim Fails as a Matter of Law**

"The elements of a breach of contract claim in Georgia are "(1) a valid contract; (2) material breach of its terms; and (3) damages arising therefrom." *Brooks v. Branch Banking & Tr. Co.*, 107 F. Supp. 3d 1290, 1295 (N.D. Ga. 2015); *see also Norton v. Budget Rent A Car Sys., Inc.*, 307 Ga. App. 501, 502, 705 S.E.2d 305 (2010)("The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken.").<u>Hernandez v. Rutco, LLC,</u> 720 F. Supp. 3d 1343, 1346 (N.D. Ga. 2024). The Defendant has failed to meet the elements of a breach of contract claim in Georgia. There are no valid contracts that exist between the Plaintiff and the Defendant and there has never been one. There was no material breach as the Defendant is a non-injured party to the RISC in question. Defendant's counterclaim is predicated on a heavily redacted "Amended Tri-Party Agreement" that fails to reference Plaintiff's specific debt or account, omits necessary identifying details, such as account numbers or transfer specifics, and is unauthenticated, untrustworthy, and incomplete, containing missing pages and signatures. The Plaintiff doesn't owe Westlake anything for the RISC in question.

Westlake's claim has no merit. "PRA failed to provide a reasonable level of documentary proof that it held legal title to a debt belonging to Green. The warrant in debt lacked documentation supporting the full chain of the assignment and failed to establish that PRA owned the debt. Compounding the problem were the multiple layers of assignment. Evidence of transfer must establish an unbroken chain of ownership. Each assignment or other writing evidencing transfer of ownership must contain the debtor's name and the account number associated with the debt."Green v. PORTFOLIO RECOVERY ASSOCIATES, 897 SE 2d 275 - Va: Court of Appeals 2024.

In addition, the "Amended Tri-Party Agreement" disclosed in discovery significantly differs from the agreement included in Defendant's motion. This discrepancy severely undermines the credibility of Defendant's claims. It also suggests that Defendant failed to comply with its discovery obligations under Rule 26. Additionally, it raises questions about whether Defendant possesses any valid documentation to establish standing. Georgia law mandates that a valid assignment requires clear documentation of the transfer of rights for the specific debt. Defendant's evidence fails to meet this threshold (*Wirth v. Cach, LLC*, 300 Ga. App. 488, 490-91, 685 S.E.2d 433, 435 (2009)). Without standing, Defendant's counterclaim for breach of

contract fails as a matter of law.

## D. Defendant's defense and evidence aren't credible

During discovery, the Defendant provided the Plaintiff with numerous documents that were clearly only produced and created for this case. The Plaintiff has never received any of the emails and a lot of the documents provided from the Defendant as proof of prior communication. See Plaintiff's Affidavit in Support. Ex. C. The failure to mention the alleged prior communications from the Defendant reaching out to the Plaintiff about the Defendant being the new servicer proves that these documents were produced in efforts to mislead the Plaintiff and this Court. At all times, the Defendant has tried to mislead the Plaintiff and this Court. The Defendant has brought a counterclaim against the Plaintiff without standing and the authority to do so; they submitted a declaration where they are misstating material facts to the events and evidence on this case; their evidence in support of their claims is misleading, incomplete, and heavily redacted; and during discovery, the sent fake documents to the Plaintiff.

## V. CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, there is no genuine dispute of material facts and the Plaintiff is entitled to a summary judgment. Defendant's actions violated the

TCPA and FDCPA, and its counterclaim for breach of contract fails as a matter of law.

Plaintiff respectfully requests that this Court grant summary judgment in his favor and enter a final order as to these claims; award the statutory damages and actual damages to the Plaintiff and for other and further relief that the Court deems as just and proper.

Respectfully submitted,

/s/ *Eric Lee Adams Jr.*
Eric Lee Adams Jr, Pro Se

1650 Anderson Mill Rd. Apt 14204

Austell, Ga 30106

404-580-2820

ericadams452@gmail.com

## CERTIFICATE OF SERVICE

I, the undersigned, Plaintiff, do hereby certify that I have this day filed this

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN**

**SUPPORT OF MOTION FOR SUMMARY JUDGMENT** with the United

States District Court Northern District of Georgia Atlanta Division and mailed, by

Certified Mail, a true and correct copy of the above and foregoing **PLAINTIFF'S**

**MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT OF**

**MOTION FOR SUMMARY JUDGMENT** to the defendant below:

Counsel of Westlake Portfolio Management,LLC

285 Peachtree Center Avenue

Marquis II Suite 1650

Atlanta, GA 30303

DATED, this the 8th day of January, 2025.